Good morning. Everyone's short this morning, and I love it, because I'm short. Good morning, Your Honors. May it please the Court, Ashwini Mate representing Jose Anthony Verduzco, and I'd like to reserve two minutes of my time for rebuttal. I'd also like to apologize for any coughing. I'm still getting over being sick. That's okay. It's going around. So you have, you've dropped the evidentiary insufficiency, but you're focusing on the prosecutorial misconduct, correct? Yes, Your Honor. Okay, go for it. Mr. Verduzco's entire defense was not that he was innocent, but it was that he was not guilty of murder. He offered the jury a third option, voluntary manslaughter, but the prosecutor shamed the jury into believing that they had no option between murder and acquittal. The government called this inartful and even improper, and the California Court of Appeals said it was not laudable, all of which is to say everyone agrees that this was wrong. Yet the California Court of Appeals never reached the constitutional federal question, which was predicated essentially on prejudice. The federal standard for misconduct is essentially predicated on prejudice. And here, because of this, and because the California Court of Appeals never reached that question of prejudice, Mr. Verduzco should obtain a de federal question on the merits. Well, I've got to ask you a couple of the arguments that you're trying to raise here you did not raise in the district court. For example, that there was intimidation to the jury that witnesses Cirilio Castaneda and Isadora Macias were telling the truth, and also that the defense theory was not credible. Those weren't raised in front of the district court, so how can you raise them for the first time here? Well, Mr. Verduzco was pro se in the district court, and we usually construe pro se petitions liberally. And he did allege that the ---- Well, but that doesn't mean that you can just raise things for the first time in appeal. Well, the comments that the prosecutor made about or sorry, the prosecutor is, you know, vouching for witnesses and the fact that he denigrated the defense as a sham, which were the sort of additional facts alleged. Well, I look at vouching for witnesses a little bit different. A prosecutor, no prosecutor, you're always going to argue the credibility of the witnesses. The prosecutor didn't say, I know something about these people that therefore should make you believe them that's not in front of you. The prosecution looked to what the facts of the case are to support why those witnesses would be telling the truth. That's not prosecutorial misconduct. In the final narrative, that was the last thing the jury heard, he indicated that in order to disbelieve those witnesses, that the jury would have to find that they were somehow co-conspirators and that there was some giant conspiracy going on. In effect, giving a juror or a layperson the implication that he knows something that they don't, that there's some, that there was no kind of conspiracy, that they couldn't disbelieve those witnesses for other reasons simply because they individually didn't find their testimony or their prior, their impeachment testimony credible. Okay. I think, why don't you go then to the argument that, I mean, the prosecutor obviously basically, and I've heard this in other situations, that it's not disputed that the jury did get the voluntary manslaughter. The jury was correctly instructed, and the lesser included offense was put before the jury, correct? Mm-hmm. So, but what essentially the prosecutor did was said, if this isn't first degree murder, then I don't know what is, and be my guest, and let, if you, you know, if you want to find him guilty of this is the heat of passion, you got the instructions there, if you want to find that, just let him walk, which, why wasn't that kind of a gift to your client? I mean, give him saying, like, if you don't find first degree murder, let him walk. Because that wasn't his argument. Mr. Verdusco wasn't asking for acquittal. He was asking for voluntary manslaughter. His entire defense was that, I'm not innocent. I'm not saying you get to walk me. I'm not saying you get to set me free. I understand that something happened here that was wrong. My only argument is that I was so provoked over months of being lied to, months of being made to feel like I was crazy for believing that this affair was going on, that I acted in that heat of passion. And by giving the jury the impression that anything less than murder was acquittal, the prosecutor effectively eliminated that third option, and that is, you know, a denial of due process. You know, it's a, it's a kind of conduct, I'm sorry, that denied Mr. Verdusco his right to present that very, that adequate defense. Well, the State Court didn't think it was a denial of due process, so that, I think, gets back to your premise of wanting de novo review on this case. Isn't the California state standard more protective than even the federal standard? The State's Is there ample case law that supports that? There is state case law that says that they, they believe it to be more protective, and yet none of those cases have ever found that it is more protective. And the state standard is separated into two parts. The second part, this Court has already found, is the equivalent, sorry, of the federal constitutional standard, whereas the first part isn't. And the California Court of Appeals only reached that first part. And there is, and I think this case is an example of that, reasons to believe that calling conduct reprehensible or deceptive is actually, actually reaches a narrower subset of conduct than anything that is wrong that may, you know, deprive a defendant of their due process rights. And so by virtue of California narrowing the conduct that they can even look to prejudice for to deceptive or reprehensible conduct, arguably conduct that requires somewhat more intentionality behind it than simply just being wrong, which the prosecutor was here, those arguments were wrong. If we disagree with you and find that we're on ECPA review, do you lose? Yes, Your Honor. And so, you know, I would argue that this Court should either reach de novo review because this was not an adjudication of the merits or because they never reached the federal constitutional question, or if this Court believes that it is, that they did reach that question and it was adjudicated on the merits, I believe under D-1, which says, you know, an unreasonable application of federal law is one where a California Court of Appeals can cite to the federal standard but misapplies it to the facts of the case. And in this case, the California Court of Appeals cited the federal standard, noticed that it was different from the State standard, and then went on State law grounds specifically. So arguably, again, they didn't adjudicate it on the federal question on the merits, but also they didn't apply the federal law to the facts of this case. Again, their entire holding was premised on California law, which reaches a much narrower subset of prosecutorial misconduct than the federal standard would. Ms. Mait, this is probably another way of repeating Judge Callahan's question, but wasn't this really what appellate courts call an inartful way of saying this is not manslaughter, this is first-degree murder? Except that they didn't argue simply based on the evidence that this wasn't manslaughter. That final, you know, soliloquy, I guess I would call it, that the prosecutor gave, which is the last thing that jury was left with, was basically telling them, how can you face your families if you, you know, you find them convicted of involuntary manslaughter? How could you possibly face your families with that? I mean, it's very shaming and it's relying on inappropriate considerations. Was the record at that time made that the defendant was entitled to a mistrial? I don't believe so. Okay. Because don't we defer to the findings of the Court of Appeals, the California Court of Appeals? It has to be so outrageous, I don't know what the word is, but you're saying that California's second prong is more restrictive than the Darden-Wainwright prong? Yes, Your Honor. Okay. Do you want to save the balance of your time? Yes, I will save the balance of my time for rebuttal. Thank you. Good morning. Good morning. May it please the Court, Michael Poulos, Deputy Attorney General, for the warning. The State Court reason will be determined that the trial prosecutor did not commit misconduct in this case. The challenged comments were part of the prosecutor's argument that Mr. Verduzco was guilty of premeditated first-degree murder. Nothing less would make sense based on the evidence, and nothing less would properly account for the culpability in this case. As the District Court here explained, this is proper argument. My friend on the other side has essentially conceded that if AEDPA review applies, Mr. Verduzco loses, so I'll start with that. Whenever the State Court is presented with a federal claim, it is presumed that in denying relief on that claim or denying relief on that issue, that they have applied federal law and they have adjudicated that case on the merits. Here we don't have to rely on that bare presumption, because at the outset of its analysis, the State Court explained that it was applying federal law by announcing correctly and clearly the federal law standard. On top of that, the Court then went on to adjudicate the issue under not really specifically outlining the state law standard, although using some of the terms from state law. But state law is more protective on this area. As the California Supreme Court said in People v. Gamache, conduct that falls short, quote, falls short of the federal standard, may still violate state law. The California Supreme Court is the final arbiter of what state law means, and so when it says that its standard is more than laudable, even if you were to disregard all of that, the Court found that this conduct was less than laudable. Under no circumstance could less than laudable really rise to the level of the federal standard. The federal standard, again, is that the conduct is such that it so infects the trial with unfairness so as to render it a denial of due process. A comment that's less than laudable can't meet that standard. Well, let me ask you this. Is — I asked about a couple of the claims that were raised for the first time in appeal. Do you consider those waived or forfeited, or are they before us? No, Your Honor, they're not before you. They were — not only were they not presented in the state court and, therefore, unexhausted, they were not raised in the district court and, therefore, are forfeited here. However, this court, if it wished to address it, could deny it under Section 22.1 of the Federal Code, Section 5.4.B.2. Ultimately, if I were in the Court's position, I would say that the claims were unexhausted, that they were forfeited, but at any event we would deny them on the merits. Double-barrel it, as the saying goes. So was the jury advised — the jury was given the correct voluntary manslaughter instructions. Absolutely, yes, Your Honor. So that's not — and the way that it goes, it says if you find the defendant not guilty of the others, then you look at this, and then you're told about voluntary manslaughter. Was the jury also instructed that the statements of counsel are not evidence and that you as jurors are the sole determinative — you determine what the evidence is, and it's what comes from the witness stand and all of that? Absolutely, Your Honor. The judge — right after arguments, actually, usually instructions sometimes come beforehand. Right after arguments ended, that's when the judge actually instructed and said that the law is as the judge explained it and the facts were as the jury were determined. All the correct instructions were given in this case. In fact, the prosecutor no less than a dozen times told the jury himself to follow the law, follow the facts. This is premeditated murder. Ms. Polis, Ms. Mate says the context in which this remark was made at the end didn't, I guess, deemphasize what she says was constant months of lying, if I can paraphrase what she said. I guess that's another way of saying it was inflammatory. So no matter the characterization by a review in court that it's less than laudable, isn't that a denial of due process if in fact the context of the argument makes it so the jury ignores the facts? I think that's her argument. There could be a situation where the prosecutor tells the jury to disregard the facts, to disregard the law in this particular type of claim. And then that coupled with the situation where perhaps they weren't instructed on the correct law, weren't told of the lesser-included offenses they were to consider, coupled with a where there was maybe a debate about whether or not this could be voluntary manslaughter, all of that combined might be a case where this would be a denial of due process. We have none of that here, Your Honor. But that would take a situation like in Berger where Justice Sullivan said the prosecutor's not entitled to strike foul blows. Is that right? Correct, Your Honor. And Ms. Mate's position is this was a foul blow. There was no foul blow in this case, Your Honor. If you review the transcript towards the end, what the prosecutor was doing was right after discussing abiding conviction, he simply gave the jury something to consider. When you leave this courtroom, here's two scenarios. One, addressing the evidence, you found this person guilty of murder. That's the obvious one. That's what's here. Another one where you found something less, despite the fact that there was no evidence to support it. Here we have, and in doing that, he simply encouraged the jury to review the evidence. Again, he said follow the facts, follow the law. It kind of was a little insulting in the sense that it was sort of like, well, if you think that this is not murder, then good luck. Just go out there and be around people. I mean, I've seen the same. You know, if you think that looking at someone in the other car can be justification to shoot them, you know, then good luck. You know, I give up. You know, I've presented the case. There's tons of evidence. And if you don't think that it makes it, just let them walk. I don't disagree. Be in your backyard. I don't disagree. Back to your house. I don't disagree with that, Your Honor. But just like in Darden v. Wainwright itself, what happened here was the prosecutor was responding to the arguments that were made by the defense. Did this come up in rebuttal, the comment about, well, what are you going to tell your family? This is a nothing burger, nothing charge, I think he said. If you think he's not guilty of murder, go ahead and walk out. Did all this come in rebuttal? Some of the comments were, most of them, the ones that we're focusing on today were in rebuttal. Some of them were in the initial. But they were in rebuttal for the most part. The ones we're talking about right now, Judge Pratt's question, it was in the rebuttal. And the reason this was confusing and the prosecutor was trying to clarify it was because the defense counsel said essentially if you're very upset and you've been lied to for several months, you essentially have the right to murder someone. And that's just voluntary manslaughter. In the words of the defense counsel, that's all it is. Well, defense argument was appealing to. I mean, obviously this man was wronged. He was, you know, the husband that he has, the wife that had an affair with the person that's kind of in the same circle and, you know, that he was clearly wronged and she continued to lie about it and was playing on their, if this has ever happened to you, you know how upsetting this would be and that essentially it could last forever. And he was responding to, well, heat of passion is a little bit different than when you take a gun to on an unarmed. And I think there was also evidence in the record that was allowed that Mr. Verdusco, not that the victim, was an abusive husband. So that all came in, right? That's correct, Your Honor. And it wasn't a bad decision. Maybe he kind of deserved it. Or it could have been more, you know, or he could have thought he would be more dangerous because he was a bad man so that you had to. It was used for purposes of self-defense, that if Mr. Verdusco were afraid of the victim, then he could use self-defense. Of course, that's not the issue here anymore, but it was an issue that was presented at trial. But just to be clear, the evidence here was so clear. Did he argue for an acquittal and voluntary manslaughter or did he just argue for voluntary manslaughter? Because I think counsel for the appellant said he was only arguing for voluntary manslaughter. Argued for voluntary manslaughter, although self-defense, both imperfect, which would also be voluntary manslaughter, and pure self-defense were also given as instructions in this case. So the jury could have concluded, could have given him full acquittal. Well, what was the basis for admitting the evidence as to the victim's character of being an abusive husband? That was for self-defense. So pure self-defense. Pure self-defense. Either, actually. Either. But the problem is that Mr. Verdusco wasn't even aware of any of that evidence. That evidence that he was. Well, I know, but I'm just wondering the analysis. Because counsel for the appellant said he was only arguing for voluntary manslaughter. But the jury was instructed as to complete self-defense, imperfect self-defense, and heat of passion? They also argued for self-defense. I think imperfect self-defense was the focus, but both were presented to the jury. And the defense counsel argued imperfect self-defense as well. Well, but did they argue complete self-defense? I don't recall that that was the focus of the argument. Well, but I guess you still have to give beyond a reasonable doubt. Could he have been found not guilty completely? Yes, Your Honor, because the jury was also instructed on all those things as well. So even if the prosecutor's argument or the defense's argument didn't rely on that, it necessarily included that. I just wanted to point out that the confusion, a point I was trying to make earlier, was that just being upset doesn't give rise to heat of passion. Heat of passion can't be sustained over months. Heat of passion is when, in an instant, you're so overcome with rage that your reason is overtaken and you can't be blamed, essentially. No, there's no law that says it has to be a minute. I mean, I've given those instructions a long time. It could be exacerbated every single day. It could be, Your Honor, if there were a precipitating event, however. He had time to plan this and calculate this. He spent months. The day before, he calmly— Okay, so we don't need to go over it. Okay, Your Honor. Because you're arguing the case again. We're arguing the legal issues. So I get that. If I can just say, Your Honor, the only reason why that's relevant, and I would never just argue the case just to argue the case, is because in the context of the minor lack of laudable comments made by the prosecutor, weighed against the evidence, the evidence is important to consider because that helps us determine whether or not those comments were such that they could so infect the trial. As weighed against the evidence, it cannot be the case. It's the strength of the case, as you're saying, relative to the comments. Yes, Your Honor.  Okay, thank you. Your Honors, I'd just like to clarify my statements about AEDPA's application. If AEDPA applies, Mr. Verjusco can still get to de novo review as long as he satisfies D-1. So although I don't believe that— Oh, yeah, that was a pretty—that was a pretty significant admission. Yeah, so I'd definitely like to correct that record. I do believe that if he can satisfy D-1, which he does, because this was a misapplication of Federal law, then this Court can still get to de novo review that way. But again, my central premise is that AEDPA shouldn't apply because this was not an adjudication on the merits of the Federal question. So you said you only argued voluntary manslaughter. Yes, Your Honor. But was the jury instructed as to self-defense, imperfect self-defense, and heat of passion? I recall instructions on imperfect self-defense and imperfect—I'm sorry, and heat of passion. I don't recall if there was a complete self-defense instruction, but I do recall the closing arguments where it was argued— where imperfect self-defense and heat of passion were the two main arguments— were the two arguments that were made and promoted by defense counsel. And, of course, acquittal is always an option. Well, and the only way he could be acquitted is self-defense, right? Right. But my reading of the defense closing argument in this case was that they were arguing entirely for voluntary manslaughter. There was no—they were not requesting that they walk him or that they acquit him. And so, Your Honor, and, you know, it's not a response, or it's still an improper rebuttal to call— just because a defense attorney is arguing for voluntary manslaughter, it's still improper not to—for a prosecutor to come up and say it's a nothing charge and to ask the jury to face their families afterwards with having, you know, convicted on a nothing charge. You know, you can argue that voluntary manslaughter is insufficient based on the facts, but you can't just denigrate the entire possibility of that charge. I think this was clearly improper, and it did happen before defense counsel's argument. In the beginning, the prosecutor got up and said, This is all or nothing. This is all or nothing. Still essentially saying you either have murder or acquittal. There is no voluntary manslaughter. And then compounded that, and I think very inflammatory—that's not really a word— compounded that in its final argument, which was the last thing that jury was left with. All right. You're in overtime. Thank you both for your arguments. This matter will stand subpoenaed.
judges: Callahan, Nguyen, Pratt